

**ORDERED in the Southern District of Florida on May 17, 2016.**

Paul G. Hyman, Jr.,
**Chief United States Bankruptcy Judge**

---

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

In re:                                  CASE NO.: 11-12803-BKC-PGH

David Howard Elowitz and                CHAPTER 7
Leslie Susan Elowitz,
_____Debtor(s)._____/

## ORDER GRANTING NATIONSTAR'S MOTION FOR SUMMARY
## JUDGMENT TO COMPEL SURRENDER OF PROPERTY (ECF NO. 40)

**THIS MATTER** came before the Court upon the *Motion for Summary Judgment* (ECF No. 40) filed by Nationstar Mortgage LLC ("Nationstar") against David Howard Elowitz and Leslie Susan Elowitz (the "Debtors"). Nationstar's Motion for Summary Judgment seeks summary judgment compelling the Debtors to surrender their real property located at 19723 Brickel Point Drive, Boca Raton, Florida 33498 (the "Property") to Deutsche Bank Trust Company Americas, as Trustee for the Residential Accredit Loans, Inc. Pass Through Certificates 2005-Q01

1

("Deutsche Bank"). For the reasons discussed below, the Court grants the Motion for Summary Judgment.

## UNDISPUTED FACTS AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed by virtue of the *Joint Stipulation of Facts* (the "Joint Stipulation") (ECF No. 46) filed by the Debtors and Nationstar. On July 22, 2005, the Debtors executed a promissory note (the "Note") in favor of US Mortgage of Florida in the principal amount of $523,200.00. The Note was secured by a mortgage on the Property, which was executed by the Debtors on July 22, 2005 (the "Mortgage").

On February 1, 2011, the Debtors filed a voluntary petition for chapter 7 bankruptcy relief. The Debtors listed the Mortgage on Schedule D (Secured Claims) of their petition and identified their creditor as Aurora Loan Services LLC ("Aurora"). The Debtors *did not* indicate on Schedule D that Aurora's claim with respect to the Mortgage was contingent, unliquidated, or disputed. The Debtors also *did not* list any claim with respect to the Note or the Mortgage on Schedule B, which asks debtors to list "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." The Debtors did, however, indicate on Form B8, Chapter 7 Individual Debtor's Statement of Intention (the "Statement of Intention"), that the Property would be "surrendered." Finally, the Debtors each signed and filed with the petition the Declaration under Penalty of Perjury to Accompany Petitions, Schedules, and

2

Statements Filed Electronically, in which they declared under penalty of perjury that they "reviewed and signed the original(s) of the [petitions and schedules] and [that] the information contained in the [petitions and schedules] is true and correct to the best of [their] knowledge and belief."

Aurora sought relief from the automatic stay on February 21, 2011, in order to foreclose on the Property in state court. *See Mot. for Relief from Stay* (ECF No. 13). The Debtors did not object to the Motion for Relief from Stay, and on March 9, 2011, the Court entered an order granting Aurora relief from the automatic stay. *See Order* (ECF No. 22). Ultimately, on May 2, 2011, the Debtors received their discharge. *See Order Discharging Debtors* (ECF No. 26).

In July 2011, Aurora, acting as the servicing agent for the owner of the Note and Mortgage, instituted a foreclosure action (the "Foreclosure Action") against the Debtors in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "Florida State Court"). *See Aurora Loan Services LLC v. David Elowitz et al.*, Case No. 502011CA010307XXXXMB. Nationstar, as successor to Aurora, was substituted in the Foreclosure Action as the party-plaintiff on June 7, 2013. Thereafter, Deutsche Bank was substituted in the Foreclosure Action as party-plaintiff on December 10, 2014.

Aurora was possession of the Note, which was specially indorsed to it, on the date it instituted the Foreclosure Action. Aurora assigned the Note and Mortgage to Nationstar in June 2014, and Nationstar simultaneously assigned the Note and

Mortgage to Deutsche Bank. Aurora, having assigned the Note while retaining possession of it, subsequently indorsed the Note in blank in December 2015. Nationstar, on behalf of Deutsche Bank, is currently in possession of the Note, which is indorsed in blank. Nationstar remains the servicing agent for Deutsche Bank, the owner of the Note and Mortgage.

On October 8, 2015, Nationstar filed a *Motion to Reopen* (ECF No. 31) the Debtors' bankruptcy case in order to obtain an order compelling the Debtors to surrender the Property. After a hearing on the matter, the Court entered an *Order* (ECF No. 38) on December 23, 2015, granting the Motion to Reopen and reserving ruling as to whom surrender should be compelled. Thereafter, Nationstar filed the Motion for Summary Judgment[1] now before the Court.

---

[1] Pursuant to Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "When deciding summary judgment, the Court may look to materials in the record such as depositions, documents, affidavits or declarations, and admissions." *Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, 981 F. Supp. 2d 1302, 1305-06 (S.D. Fla. 2013) (*citing* Fed. R. Civ. P. 56(c)). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Diaz v. Amerijet Int'l, Inc.*, 872 F. Supp. 2d 1365, 1368 (S.D. Fla. 2012) (*quoting Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013). Finally, the moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011).

## CONCLUSIONS OF LAW

### I.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (O).

### II.  What does it mean to "surrender" real property?

Nationstar contends in its Motion for Summary Judgment that it is undisputed that Deutsche Bank is the "holder" of the Note and Mortgage secured by the Property and that because the Debtors chose to "surrender" the Property on their Statement of Intention, the Court should compel the Debtors to surrender the Property to Deutsche Bank. The Debtors contend, on the other hand, that when a debtor states an intention to surrender property, the Bankruptcy Code merely obliges the debtor to surrender the property to the trustee—an obligation the Debtors already fulfilled. Accordingly, the Court must first determine what it means to "surrender" real property pursuant to Section 521(a)(2)(A) of the Bankruptcy Code.

Section 521(a)(2)(A) of the Bankruptcy Code requires a chapter 7 consumer debtor who owns encumbered property to formally declare on his statement of intention whether he intends to: (1) redeem the property, (2) reaffirm the debt secured by the property, or (3) surrender the property. 11 U.S.C. § 521(a)(2)(A). Section  521(a)(2)(B) goes on to provide that the debtor must perform his stated intention with respect to the encumbered property "within 30 days after the first

5

date set for the meeting of creditors . . . or within such additional time as the court . . . fixes[.]" 11 U.S.C. § 521(a)(2)(B). These statutory directives unambiguously require the debtor to make his intention known as to encumbered property and to perform this intention. However, when the debtor chooses to "surrender" real property, it is decidedly unclear what actions the debtor must take—or refrain from taking—in order to perform his stated intention.

As noted above, the Debtors contend that under § 521(a)(2) they were merely required to surrender the Property to the Chapter 7 Trustee Deborah Menotte (the "Trustee") and that they did exactly that, thus adequately performing their stated intention. Because the Trustee chose to abandon the Property, it is the Debtors' position that the Property simply reverted back to the Debtors. The Court, however, previously rejected this exact argument and held instead that in order to "surrender" real property within the meaning of § 521(a)(2), the debtor must surrender the property *to the lienholder* and thus may not defend or contest the lienholder's efforts to foreclose on the property in a state court proceeding. *In re Failla*, 529 B.R. 786, 792-93 (Bankr. S.D. Fla. 2014), *aff'd sub nom. Failla v. Citibank, N.A.*, 542 B.R. 606 (S.D. Fla. 2015).[2] After considering the matter once again and examining the relevant opinions issued after *In re Failla*, the Court reaffirms its holding in *In re Failla* for the reasons discussed below.

---

[2] The Debtors further appealed the district court decision to the Eleventh Circuit Court of Appeals. That appeal is currently pending.

The term "surrender" is not defined in 11 U.S.C. § 521(a)(2) or elsewhere in the Bankruptcy Code. *See In re Failla*, 529 B.R. at 789 (internal citations omitted). When the words in the statute are not defined terms, courts should look to their ordinary, dictionary-defined meanings. *See Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury, Office of Comptroller of Currency*, 118 F.3d 1461, 1463 (11th Cir. 1997) (quotations and citations omitted) (stating that "[c]ourts must assume that Congress intended the ordinary meaning of the words it used, and absent a clearly expressed legislative intent to the contrary, that language is generally dispositive"). Black's Law Dictionary defines "surrender" as "[t]he act of yielding to another's power or control" or "[t]he giving up of a right or claim." *In re Failla*, 529 B.R. at 789 (*quoting Black's Law Dictionary* 1581 (9th ed. 2009)).

Although courts occasionally take conflicting positions as to what it means to "surrender" property, "[m]ost courts appear to assume that the surrender option entails a surrender to the lienholder, not to the trustee[.]" *In re Kasper*, 309 B.R. 82, 85-86 (Bankr. D.D.C. 2004) (emphasis added); *see also, Hull v. Wells Fargo Bank, N.A.*, No. 6:15-CV-01990-AA, 2016 WL 1271675, at *3 (D. Or. Mar. 28, 2016)) (internal quotations and citations omitted) (noting that "[c]ourts interpret 'surrender' under the Bankruptcy Code to mean voluntarily relinquish[ing] all rights in the property, including the right to possession, to the secured creditor."). Indeed, the Eleventh Circuit Court of Appeals stated in *dicta* that "[s]urrender provides that a debtor surrender the collateral to the lienholder who then disposes

7

of it pursuant to the requirements of state law." *In re Taylor,* 3 F.3d 1512, 1514 (11th Cir. 1993). The First and Fourth Circuit Courts of Appeal agree that "the most sensible connotation of 'surrender' . . . is that the debtor agreed to make the collateral available to the secured creditor-*viz.*, to cede his possessory rights in the collateral." *In re Pratt*, 462 F.3d 14, 18 (1st Cir. 2006); *see also, In re White*, 487 F.3d 199, 207 (4th Cir. 2007). Moreover, because a majority of courts take the position that the debtor must surrender the property at issue to the lienholder, "most bankruptcy courts addressing motions to compel compliance with surrender provisions [also] . . . have concluded [that] active opposition to foreclosure is irreconcilable with surrender[.]" *Hull v. Wells Fargo*, 2016 WL 1271675, at *4 (*citing In re Lapeyre*, 544 B.R. 719, 722 (Bankr. S.D. Fla. 2016) (Mark, J.); *In re Metzler*, 530 B.R. 894, 900 (Bankr. M.D. Fla. 2015)).

The Court agrees with the majority approach discussed above. *All debtors* have an obligation to surrender property of the estate in their possession to the trustee. *See* 11 U.S.C § 521(a)(4) (mandating that the debtor must "surrender to the trustee all property of the estate"). Thus, in order for surrender to mean *anything* in the context of § 521(a)(2), it has to mean that the debtor must surrender the property to the lienholder and must not contest the efforts of the lienholder to foreclose on the property. Otherwise, a debtor who states an intention to surrender property and then obtains a discharge based, at least partially, on this sworn statement "could enjoy possession of the collateral indefinitely while hindering and

8

prolonging the state court process"—a so-called "ride-through." *In re Metzler*, 530 B.R. at 900. The Eleventh Circuit explicitly held that "the plain language of § 521 did not provide for a ride-through option, and [that] permitting a 'ride[-]through' would give the debtor a 'head start'—not a 'fresh start.'" *Id.* (*citing In re Taylor,* 3 F.3d at 1516"). The Eleventh Circuit also reasoned that if a ride-through option was available, it would render the other alternatives in § 521(a)(2) irrelevant. *Id.* (internal citations omitted).

Although the approach described above reflects the majority approach, a few courts have indeed held that pursuant to § 521(a)(2), a chapter 7 debtor who indicates surrender of property in his statement of intention need only surrender the property to the chapter 7 trustee. Notably, Judge Isicoff of the Bankruptcy Court for the Southern District of Florida recently held just that, opining that "[c]ompulsory surrender of real property collateral by a debtor to a lienholder in chapter 7 is not supported by, and indeed ignores, the express provisions of the Bankruptcy Code." *In re Elkouby*, No. 14-23934-BKC-LMI, 2016 WL 798177, at *8 (Bankr. S.D. Fla. Feb. 29, 2016). Judge Isicoff reasoned that the majority approach does not "address whether and to what extent the debtors' non-interference with the chapter 7 trustee's administration of the property in question meant the debtors complied with their stated intention to surrender." *Id.* at *6. Quoting the district court's opinion affirming *In re Failla*, Judge Isicoff noted:

> [O]nce the debtor decides to "surrender" secured property, the debtor

9

> has abandoned any interest or claim that he may have had to the property as [1] against the trustee, if the trustee decides to administer the property, or [2] against any secured creditor the debtor listed in the filed schedules having a valid, undisputed, non-contingent and enforceable secured lien on the property.

*Id.* (*quoting Failla v. Citibank*, 542 B.R. at 611). Judge Isicoff, however, did not quote the remaining—and critical—portion of this paragraph:

> While the debtor need not physically deliver the property to the secured party, the debtor is precluded from taking any action which would interfere with the secured creditor's ability to obtain legal title to, and possession of, the property through legal means. <u>Defending against a foreclosure proceeding relating to the secured property would be inconsistent with the debtor's stated intention to surrender the property within the meaning of 11 U.S.C. § 521(a)(2).</u>

*Failla v. Citibank*, 542 B.R. at 611 (emphasis added). Moreover, the district court in

*Failla v. Citibank* went further, holding:

> [A]n abandonment of secured property by the trustee to the debtor pursuant to 11 U.S.C. § 554(c) only restores *title* to the debtor as if no bankruptcy petition had been filed. The abandonment does not affect other aspects of the debtor's rights and responsibilities relative to the property that flow from the bankruptcy. <u>Just as a discharge of personal liability to pay the obligation on the note survives after abandonment of the property by the trustee, so too does the legal effect of the debtor's decision to surrender the property</u> pursuant to 11 U.S.C. § 521[(a)](2). This legal effect includes a relinquishment of the debtor's interest in the secured property as against the secured creditor, as well as a prohibition against interfering or impeding the secured creditor's efforts to take possession of the property by available legal means. To hold otherwise would permit the debtor to use the "fiction . . . invented by courts to . . . be blindly followed to a result that is unjust."

*Failla v. Citibank, N.A.*, 542 B.R. at 612 (emphasis added) (*citing In re Plummer*,

513 B.R. 135, 143-44 (Bankr. M.D. Fla. 2014) and *quoting Wallace v. Lawrence*

10

*Warehouse Co.*, 338 F.2d 392, 394 n. 1 (9th Cir. 1964)). Accordingly, the Court does not find Judge Isicoff's opinion, which represents the minority approach, to be persuasive.

There is also a concern, which Judge Isicoff did not address,[3] that a debtor who states an intention to surrender property and then proceeds to contest a foreclosure proceeding is making a mockery of the legal system by taking inconsistent positions:

> In an effort to obtain her chapter 7 discharge, the Debtor swears—under the penalty of perjury—an intention to "surrender" her property. In other words, the Debtor is representing to the Court that she will make her property available to the [lienholder] by refraining from taking any overt act that impedes the [lienholder's] ability to foreclose its interest in the property. Yet, once she receives her discharge, the Debtor in fact impedes the [lienholder's] ability to foreclose its mortgage.

*In re Guerra*, 544 B.R. 707, 710 (Bankr. M.D. Fla. 2016) (Williamson, J.). Fortunately, courts have a mechanism for dealing with parties taking inconsistent positions. "Under both federal and state law, the doctrine of judicial estoppel generally precludes a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* (internal citations and quotations omitted). For Judge Williamson in *In re Guerra*,

---

[3] Because it was not relevant to her decision in the *Elkouby* case, Judge Isicoff noted, "Nothing in this opinion is intended to address whether and to what extent the failure to schedule a secured debt as disputed, or failure to schedule potential counterclaims against a foreclosing lienholder as an asset, has any collateral estoppel or judicial estoppel effect in an action to foreclose that lienholder's security interest." 2016 WL 798177, at *1 n. 2.

when confronted with this scenario, the issue became which court should determine

whether judicial estoppel applies. 544 B.R. at 711. Judge Williamson opined:

> If a debtor, who has indicated an intent to surrender real property,
> opposes a foreclosure while his or her bankruptcy case is still pending
> or within a relatively short time afterwards, then the bankruptcy court
> should be the one to address the issue. In that case, it would appear
> the debtor is perpetrating a fraud on the bankruptcy court or making a
> mockery of the bankruptcy system. But if years pass between the time
> a debtor indicates an intent to surrender and the time the debtor
> opposes a state court foreclosure, then the issue of judicial estoppel
> should be decided by the state court, which is in the best position to
> determine whether the debtor is making a mockery of the foreclosure
> action by taking a position inconsistent with the one she took in the
> bankruptcy case.

*In re Guerra*, 544 B.R. at 711. The Court appreciates this approach and

acknowledges that it has now been nearly five years since the Debtors received

their discharge and the case was closed. However, the Debtors' case was reopened in

order to decide the matter now before the Court, significant briefing has taken place

in this Court, and the issue is ripe for a decision. It would be a waste of judicial

resources and the parties' time to refer this matter back to the state court at this

stage. Moreover, the Debtors have not challenged the Court's jurisdiction to rule on

the Motion for Summary Judgment or to issue an order compelling surrender of the

Property.

 For the foregoing reasons, the Court finds that based upon the undisputed

facts, the Debtors failed to comply with their Statement of Intention pursuant to §

521(a)(2) as the Debtors continued to contest the Foreclosure Action in the Florida

State Court after stating their intention to surrender the Property in their bankruptcy proceeding and receiving their discharge. Accordingly, the Court finds it appropriate to compel the Debtors to surrender the Property to the appropriate lienholder, as determined below, and to cease their efforts to contest the Foreclosure Action by all means necessary, including the withdrawal of all affirmative defenses.

## III.    To whom the Property must be surrendered?

The secondary issue raised by Nationstar's Motion for Summary Judgment is *to whom* the Property must be surrendered. As discussed above, with respect to the issue of what constitutes surrender under § 521(a)(2), the Court rejected the Debtors' argument that the Debtors were merely required to surrender the Property to the Trustee. It follows that the Court also rejects the Debtors' argument that because the Trustee abandoned the Property, if the Property is to be surrendered to anyone, it must be surrendered to the Debtors themselves. However, even though the Court concluded in the previous section that the Property must be surrendered to the lienholder, the issue of which lienholder is the appropriate party to whom the Property must be surrendered remains.

### A. *According to the Joint Stipulation, the Property must be surrendered to Deutsche Bank*

Nationstar and the Debtors submitted, "by and through their undersigned counsel," the *Joint Stipulation of Facts* (the "Joint Stipulation") (ECF No. 46) with respect to the Motion for Summary Judgment now before the Court. In the Joint

Stipulation, Nationstar and the Debtors stipulated to certain facts which "are admitted and require no proof[.] J. Stip. at 1. Although factual stipulations generally establish uncontroversial background facts, one stipulated fact here partially dictates the outcome of Nationstar's Motion for Summary Judgment: "Deutsche Bank is the person to whom surrender should be compelled." *Id.* at ¶ 26 (emphasis added). This stipulated statement was not qualified in any way. In light of this stipulation, the Debtors' argument that the Debtors themselves—not Deutsche Bank—are the proper party to whom the Property should be surrendered is both disingenuous and meritless.

The Court will not disregard a stipulated fact in favor of the Debtors' arguments to the contrary. If the Debtors wished to argue that Deutsche Bank is not the proper party to whom the Property should be surrendered, the Debtors should not have stipulated that Deutsche Bank IS the party to whom surrender should be compelled. Accordingly, the Court finds that based upon the facts stipulated to by Nationstar and the Debtors, Deutsche Bank is the proper party to whom the Debtors must surrender the Property.

### B. Pursuant to the law of negotiable instruments, the Property must be surrendered to Deutsche Bank

Even if the Debtors had not stipulated that "Deutsche Bank is the person to whom surrender should be compelled," the Court finds that Deutsche Bank is indeed the proper party to whom the Debtors must surrender the Property because

Deutsche Bank is entitled to enforce the Note for the reasons discussed in detail below.

The crux of Nationstar's argument in support of its Motion for Summary Judgment is that: (1) the Note is a negotiable instrument; (2) Deutsche Bank is the "holder" of the Note; (3) because Deutsche Bank is the holder of the Note, Deutsche Bank is entitled to enforce the Note; and (4) because Deutsche Bank is entitled to enforce the Note, the Court must compel surrender to Deutsche Bank as a matter of law. Accordingly, the Court must determine whether Deutsche Bank is indeed legally entitled to enforce the Note such that it is the proper party to whom surrender should be compelled.

### i. The Note is a negotiable instrument

In Florida, the law of negotiable instruments is governed by Florida's version of Article 3 of the Uniform Commercial Code. *See* Fla. Stat. §§ 673.1011 – 673.6051. The term "negotiable instrument" is defined as:

> [A]n unconditional promise or order to pay a fixed amount of money . . . if it:
>
> > (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> > (b) Is payable on demand or at a definite time; and
> > (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
> >
> > > 1. An undertaking or power to give, maintain, or protect collateral to secure payment;
> > > 2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

15

> 3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.

Fla. Stat § 673.1041(1). "An instrument is a 'note' if it is a promise and is a 'draft' if it is an order. If an instrument falls within the definition of both 'note' and 'draft,' a person entitled to enforce the instrument may treat it as either." Fla. Stat § 673.1041(5).

The Note[4] here qualifies as a negotiable instrument. The Note (1) contains an unconditional promise to pay; (2) is payable "to the order of Lender," who is identified in the Note as US Mortgage of Florida; (3) is payable at a definite time or on demand—fixed monthly payments on the first day of each month, the full remaining balance on August 1, 2035, the maturity date (if the Debtors still owe amounts under the Note on the maturity date), and in the event of default, the full remaining principle balance and accrued interest upon written demand; and (4) does not state any other undertaking or instruction by the person promising payment to do any act in addition to the payment of money (notwithstanding the three exceptions outlined above). Because the Note is a negotiable instrument, entitlement to enforce the Note is governed by Article 3 of Florida's Uniform Commercial Code.

ii. <u>Negotiation of the Note</u>

A negotiable instrument may be transferred by "negotiation." The term "negotiation" means "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Fla. Stat. § 673.2011(1). "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." Fla. Stat. § 673.2011(2). The term "indorsement" means "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument [.]" Fla. Stat. § 673.2041(1). There are two primary types of indorsements—special indorsements and blank indorsements:

> (1) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person[.]

> (2) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

Fla. Stat. § 673.2051(1), (2). The transfer of an instrument, "whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to

---

[4] The Note is attached as Exhibit A to Nationstar's Exhibit 1, Affidavit of Kristen Trompisz, to its Motion for Summary Judgment.

enforce the instrument, including any right as a holder in due course[.]" Fla. Stat. § 673.2031(2). However, "the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." *Id*.

The Note at issue here is payable to US Mortgage of Florida. According to the Joint Stipulation, as of March 2011, Aurora, acting as the servicing agent for US Mortgage of Florida, was in possession of the Note, which bore a special indorsement to Aurora. J. Stip. ¶ 18; *see also*, Aff. of Kristen Trompisz ("Trompisz Affidavit"),[5] Mot. for Summ J., Ex. 1. ¶¶ 5-7.[6] Nationstar became the successor to Aurora, and Aurora assigned[7] the Note and Mortgage to Nationstar on June 9,

---

[5] Nationstar filed the Affidavit of Kristen Trompisz as Exhibit 1 to its Motion for Summary Judgment. Attached to the Affidavit are nine exhibits, labeled A through I. Ms. Trompisz is a current employee of Nationstar and a former employee of Aurora who has personal knowledge of the record-keeping practices of both Nationstar and Aurora. Trompisz Aff. ¶ 1-3. The Debtors have filed nothing to contradict the Trompisz Affidavit.

[6] The Trompisz Affidavit explains that Aurora first obtained physical possession of the Note on February 22, 2008. Trompisz Aff. ¶ 5 and Ex. C. "At that time the [N]ote bore a special indorsement from US Mortgage of Florida to Homecomings Financial Network, Inc., and a blank indorsement from Homecomings Financial Network, Inc." *Id*. ¶ 5. On March 31, 2011, Aurora sent the Note to its attorney Kahane & Associates, P.A. *Id*. ¶ 6 and Ex. D. At the time the Note was sent to Kahane & Associates, the Homecomings Financial blank indorsement had been closed, and Homecomings Financial had specially indorsed the Note to Residential Funding Corporation, who then specially indorsed the Note to Deutsche Bank, who finally specially indorsed the Note to Aurora. *Id*. ¶ 7 and Ex. E.

[7] Legally, an assignment and indorsement are not equivalent:
> Although it is possible to transfer the title to a note by assignment, an assignment will not make the transferee a holder of a negotiable instrument if it involves only a transfer of title without delivery of possession of the instrument; although a document such as an assignment might be sufficient to convey ownership of an instrument, the purchaser is not entitled to enforce it under the U.C.C. until he or she obtains possession.

6 Fla. Jur 2d Bills and Notes § 90.

2014. *See* J. Stip. ¶ 19; Trompisz Aff. ¶ 10 and Ex. G. Nationstar then immediately assigned the Note and Mortgage to Deutsche Bank. J. Stip. ¶ 20; Trompisz Aff. ¶ 10 and Ex. H. Nationstar remained as servicer for Deutsche Bank pursuant to a Limited Power of Attorney (the "Power of Attorney") executed on March 18, 2014. *See* J. Stip. ¶ 17; Trompisz Aff. ¶ 11 and Ex. I. Significantly, the Debtors also stipulated that Aurora indorsed the Note in blank in December 2015 and that Nationstar is in possession of the Note on behalf of Deutsche Bank.[8] J. Stip. ¶¶ 21, 22; *see also*, Trompisz Aff. ¶ 8 and Ex. A.[9] Therefore, through the series of transactions listed above, the Note was negotiated by an indorsement in blank, and Deutsche Bank is in possession of the Note.

    iii. <u>Entitlement to enforce the Note</u>

The law of negotiable instruments is inextricably intertwined with mortgage foreclosure law[10] and, as is evident here, with the issue of surrender in bankruptcy

---

[8] The Power of Attorney allows Nationstar to perform such acts which are necessary and appropriate to enforce and preserve Deutsche Bank's "interests in the Mortgage Notes, Mortgages or Deeds of Trust[.]" Trompisz Aff., Ex. I, 1 and ¶ 8.

[9] According to the Trompisz Affidavit, the Note is currently indorsed in blank by Aurora and is in the physical possession of Nationstar on behalf of Deutsche Bank. Trompisz Aff. ¶ 8. Ms. Trompisz attests to this, stating, "I have personal knowledge of this because I have the original [N]ote before me in-hand as I execute this affidavit[ and] [a] true and correct copy of the original [N]ote as it appears at this time is attached as Exhibit A." *Id*.

[10] "A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose when the complaint is filed." *Murray v. HSBC Bank USA*, 157 So. 3d 355, 357 (Fla. 4th DCA 2015) (internal citation and quotation marks omitted), review dismissed, 171 So. 3d 117 (Fla. 2015). Standing may be established from a plaintiff's status as the note holder or from its status as a nonholder in possession of the note who has the rights of a

proceedings. Because the issue now before the Court is to whom the Property should be surrendered, it is necessary for the Court to determine whether Deutsche Bank is presently "entitled to enforce" the Note. If Deutsche Bank is presently "entitled to enforce" the Note, Deutsche Bank is the party to whom the Property must be surrendered.

The "person entitled to enforce" a negotiable instrument is, for the purposes of the matter at hand, either: (1) the holder of the instrument; or (2) a nonholder in possession of the instrument who has the rights of a holder. *See* Fla. Stat. § 673.3011(1), (2). In the context of the law of negotiable instruments, the "holder" of an instrument is "[t]he person in possession of a negotiable instrument that is payable either to bearer[11] or to an identified person that is the person in possession." Fla. Stat. § 671.201(21).[12] It is well-established that "[a] plaintiff who is not the original lender may establish standing to foreclose a mortgage loan by submitting a note with a blank or special endorsement, an assignment of the note, or an affidavit otherwise proving the plaintiff's status as the holder of the note." *Focht v. Wells Fargo Bank, N.A.*, 124 So. 3d 308, 310 (Fla. 2d DCA 2013) (citing

---

holder. *Id.* However, "standing must be established as of the time of filing the foreclosure complaint." *Focht v. Wells Fargo Bank, N.A.*, 124 So. 3d 308, 310 (Fla. 2d DCA 2013) (internal citation omitted).
[11] "Bearer" means "a person in possession of a negotiable instrument . . . that is payable to bearer or indorsed in blank." Fla. Stat. § 671.201(5).

[12] The "holder" of an instrument qualifies as a "holder in due course" if it meets additional criteria. *See* Fla. Stat. § 673.3021. A holder in due course has greater rights with respect to a negotiable instrument than a mere holder. *See* Fla. Stat. § 673.3051(2); *see also, Davis v. Starling*, 799 So. 2d 373, 376 (Fla. 4th DCA 2001) (noting that "[i]t is well established that a simple holder of a note and

*McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012).

As discussed above, the Note is a negotiable instrument and thus may be transferred by negotiation. Negotiation may be accomplished by indorsement of the Note and transfer of possession of the Note. Aurora obtained the Note through a series of special indorsements on or before March 21, 2011. On July 11, 2011, Aurora instituted the foreclosure action. Aurora then indorsed the Note in blank, and Nationstar, acting as servicer of the Note on behalf of Deutsche Bank, obtained physical possession of the Note. Obtaining possession of the Note on behalf of Deutsche Bank is authorized by the Power of Attorney as an act which is necessary to enforce and preserve Deutsche Bank's ownership of the Note. *See* Trompisz Aff., Ex. I, 1 and ¶ 8. Possession of the Note here is crucial because the Note is indorsed in blank. Because Deutsche Bank, through Nationstar, is in possession of the Note indorsed in blank, Deutsche Bank is the holder of the Note. Pursuant to Fla. Stat. § 673.3011(1), the holder of the Note is entitled to enforce the Note. Therefore, Deutsche Bank is entitled to enforce the Note. Because Deutsche Bank is entitled to enforce the Note, it is the current lienholder and the party to whom surrender must be compelled.

---

mortgage-as opposed to a holder in due course-takes the instruments subject to the personal defenses of the maker against the original payee/mortgagee")

IV.    <u>**Conclusion**</u>

The Motion for Summary Judgment raises two primary issues: (1) what does it mean to "surrender" property pursuant to 11 U.S.C. § 521(a)(2); and (2) if the Property must be surrendered to the lienholder, which lienholder is the appropriate party to whom the Property must be surrendered. As to the first issue, the Court concludes that to "surrender" property pursuant to § 521(a)(2) means to surrender the property to the lienholder such that the debtor makes the property available to the lienholder and gives up his rights to the property and to defend or contest any related state court foreclosure action. Here, by continuing to contest the Foreclosure Action, the Debtors undoubtedly failed to surrender the Property to the lienholder. As a result, the Court finds it appropriate under the circumstances to compel the Debtors to surrender the Property to the appropriate lienholder by ordering the Debtors to make the Property available to that lienholder and to cease all efforts to contest the Foreclosure Action.

The second issue raised by Nationstar's Motion for Summary Judgment is *to whom* the Property must be surrendered. As discussed above, the Court finds that the Property must be surrendered to Deutsche Bank for two reasons. First, the Debtors and Nationstar stipulated that "Deutsche Bank is the person to whom surrender should be compelled." J. Stip. ¶ 26. This stipulated statement was not qualified in any way. Based on this stipulation alone, the Court finds that the Property must be surrendered to Deutsche Bank. Second, even if the Debtors had

never made this stipulation, the Court finds that Deutsche Bank is the party to whom the Property must be surrendered. The Note, which is secured by a mortgage on the Property, is a negotiable instrument. Through a series of indorsements, the Note was ultimately "negotiated" by an indorsement in blank. It is undisputed that Nationstar, on behalf of Deutsche Bank, is now in possession of the Note. Accordingly, Deutsche Bank is the "holder" of the Note and is thus "entitled to enforce the Note." Because Deutsche Bank is entitled to enforce the Note, Deutsche Bank is the current lienholder and the party to whom surrender must be compelled.

## ORDER

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that

1. Nationstar's Motion for Summary Judgment is **GRANTED**.

2. The Debtors shall surrender the Property to Deutsche Bank.

3. The Debtors shall cease all efforts to defend or contest the Foreclosure Action in Florida State Court.

### ###

Copies Furnished To:

Adam I Skolnik, Esq.

Andrea S. Hartley, Esq.

Deborah Menotte, Trustee

AUST